## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

ANTHONY W. RITCHIE,                                    Case No. 1:14-cv-286

               Plaintiff,                                    Beckwith, J.
     v.                                                     Bowman, M.J.

COMMISSIONER OF SOCIAL SECURITY,

              Defendant.

### REPORT AND RECOMMENDATION

Plaintiff Anthony W. Ritchie filed this Social Security appeal in order to challenge the Defendant's finding that he is not disabled. *See* 42 U.S.C. §405(g). Proceeding through counsel, Plaintiff presents several claims of error. The Commissioner filed a response, to which Plaintiff filed no reply. The ALJ's finding should be REVERSED and remanded for further review. While a single error may have been viewed as harmless on the record presented, the combination of errors lead to a conclusion that the Commissioner's decision is not supported by substantial evidence.

### I. Summary of Administrative Record

Plaintiff filed an application for Disability Insurance Benefits ("DIB") on December 28, 2010, alleging disability beginning August 18, 2010 based primarily upon back and leg pain. Plaintiff was born in 1969 and was considered a younger individual both on his disability onset date and through the date of the Commissioner's last decision. He graduated from high school and completed training in auto mechanics.

Plaintiff's DIB application was denied initially and on reconsideration, and he timely requested an evidentiary hearing. On October 12, 2012, Plaintiff, through

counsel, appeared and testified at a hearing in Cincinnati, Ohio held before Administrative Law Judge ("ALJ") Kristen King (Tr. 84-111).   An impartial vocational expert also appeared and testified.   On November 19, 2012, ALJ King issued an unfavorable written decision. (Tr. 70-78).

The ALJ determined that Plaintiff has the following severe impairments: "degenerative disc disease; peripheral neuropathy; obesity; diabetes; history of plantar fasciitis, neuritis, and Morton's neuroma – left foot; history of recurrent cellulitis." (Tr. 72).  However, the ALJ held that Plaintiff does not have an impairment or combination of impairments that would meet or medically equal one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appx. 1.  (Tr. 73).  Instead, she found that Plaintiff retains the residual functional capacity ("RFC") to perform a range of sedentary work, with the following additional restrictions:

> The claimant can push or pull only occasionally with his lower extremities. He can occasionally balance, stoop, kneel, crouch, crawl, and climb ramps or stairs.  He can never climb ladders, ropes, or scaffolds.  The claimant must avoid all use of dangerous machinery and all exposure to unprotected heights.  He must be allowed to alternate between sitting and standing approximately every hour, for one to two minutes duration, while remaining at the work station.  The claimant is limited to performing simple, routine, and repetitive tasks.

(Tr. 73-74).

The ALJ agreed that Plaintiff could no longer perform his past relevant work as an assistant manager of an auto repair shop, or as a retail auto parts manager, both of which were semi-skilled or skilled positions.  (Tr. 77).  However, the ALJ determined that Plaintiff could perform other jobs that exist in significant numbers in the national economy, including unskilled jobs such as document preparer, lens inserter, and table worker.  (Tr. 77).  For that reason, the ALJ held that Plaintiff was not disabled. (Tr. 78).

2

The Appeals Council denied Plaintiff's request for further review; therefore, the ALJ's decision remains as the final decision of the Commissioner.

In his assertions of error, Plaintiff contends that the ALJ improperly rejected the opinions of his two treating physicians, failed to fully evaluate his morbid obesity, and therefore failed to sustain the Commissioner's burden to show that jobs exist that Plaintiff can perform.  In addition, Plaintiff asserts error in the failure of the Appeals Council to consider "new and material" evidence, including two post-hearing statements from his treating physicians and evidence of depression.

## II. Analysis

### A. Judicial Standard of Review

To be eligible for benefits, a claimant must be under a "disability." *See* 42 U.S.C. §1382c(a).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal quotation omitted).  In conducting this review, the court should consider the record as a whole.  *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978).  If substantial evidence

supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for supplemental security income or for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920. A plaintiff bears the ultimate burden to prove by sufficient evidence that he is entitled to disability benefits. 20 C.F.R. §404.1512(a).

### B.  Specific Errors

### 1.  Medical Opinion Evidence Before the ALJ

Plaintiff first claims that the ALJ erred in evaluating the medical opinion evidence provided by two treating physicians:  Dr. Tegtmeier, and Dr. Siegel, both of whom opined that Plaintiff is completely disabled from all work.  Social security regulations generally require the most weight to be given to the opinions of treating physicians, with less weight to be given to the opinions of consultants.  In addition, the opinions of examining consultants are generally entitled to greater weight than are the opinions of non-examining consultants. *See* 20 C.F.R.§404.1527(c)(1); *see also Gayheart v. Com'r*, 710 F.3d 365, 375-376 (6th Cir. 2013).  However, these principles are subject to exceptions on a case-by-case basis, so long as the ALJ followed the regulatory scheme, offered a reasoned basis for her decision, and that decision is supported by substantial evidence.

Plaintiff argues that the ALJ erred because she did not give greater weight to other medical opinions, but instead made her own findings.  Specifically, the ALJ explained that, in addition to rejecting the disability opinions of two treating physicians, she was giving "little weight" to the physical capacity assessments from non-examining agency consultants.  The referenced consultants determined that Plaintiff could perform work at the "light" exertional level, but the ALJ determined that Plaintiff had greater restrictions, and should be limited to a range of work at the "sedentary" level.  I do not find the ALJ's decision to give the opinions of the consultants little weight in itself to constitute error, as the consultants had not reviewed later records, and it remains within the province of the Commissioner to determine a claimant's RFC.  *See* 20 C.F.R.

§404.1527(d)(2)(stating that residual functional capacity determination is reserved to the Commissioner).

Returning to Plaintiff's primary argument concerning the weight given to the opinions of his treating physicians, the relevant regulation provides: "If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight." 20 C.F.R. §404.1527(c)(2); *see also Warner v. Com'r of Soc. Sec.,* 375 F.3d 387, 390 (6th Cir. 2004). The rationale for what has become known as "the treating physician rule" has been stated as follows:

> [T]hese sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of the claimant's medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations.

*Wilson v. Com'r of Social Security*, 378 F.3d 541, 544 (6th Cir. 2004)(quoting former 20 C.F.R. § 404.1527(d)(2)).  The treating physician rule requires the ALJ to generally give "greater deference to the opinions of treating physicians than to the opinions of non-treating physicians."  *See Blakley v. Com'r of Social Security*, 581 F.3d 399, 406 (6th Cir. 2009).  If an ALJ does not give controlling weight to a treating physician's opinion, she must articulate the weight given to the opinion, and provide "good reasons" for that decision.  *Id.* (additional citations omitted).

### a.  Dr. Todd Tegtmeier

Plaintiff generally claims that his physical condition deteriorated after he first endured a workers' compensation injury to his back in 2009, which was treated with an

epidural steroid injection in 2010.  Approximately eight months elapsed between the original injury in 2009 and his epidural injection in 2010, during which Plaintiff continued to work full-time.  Following the epidural injection, Plaintiff's blood sugar levels spiked, triggering a flare-up of the recurring cellulitis in his leg, and causing him to take short-term disability.  (Tr. 238). His primary care physician, Todd Tegtmeier, M.D., continued to keep him off work, until his position was terminated in December 2010. (Tr. 262).

Plaintiff argues that the ALJ erred by rejecting the disability opinions of Dr. Tegtmeier,[1] who has treated Plaintiff's myriad conditions for approximately 13 years, seeing him approximately every three months.  Dr. Tegtmeier originally recommended that Plaintiff remain off work only for a thirty day period, from August 18, 2010 until September 17, 2010, based upon the acute "lower leg cellulitis" in Plaintiff's left leg that was causing pain and swelling at that time. (Tr. 238).  Plaintiff had previously experienced cellulitis that resolved, but the condition flared up again following a steroid injection in August 2010 for treatment of Plaintiff's back pain.  On September 8, 2010, just 9 days before he anticipated that his patient would return to work, Dr. Tegtmeier completed an "Attending Physician Statement" in which he noted that he [Dr. Tegtmeier] "was told no light duty available – if [Plaintiff] could work sitting, without any standing, then likely could return sooner."  (*Id.*).

However, on September 20, 2010, Dr. Tegtmeier updated his opinion on a new "Certification of Health Care Provider" form submitted to Plaintiff's employer.  On that

---

[1]Plaintiff most heavily relies on a "Medical Source Statement" from Dr. Tegtmeier dated April 2013. However, the April 2013 form, which contains much greater restrictions, was never reviewed by the ALJ but instead was submitted only to the Appeals Council.  Therefore it cannot generally be considered by this Court in determining whether the ALJ's decision was supported by substantial evidence. *See Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993).

form, Dr. Tegtmeier stated that he did "not consider this [Plaintiff's short-term disability for cellulitis] a chronic condition, though might recur in future."  (Tr. 295, emphasis original).[2]  In responding to a query as to whether Plaintiff is "unable to perform work of any kind?," Dr. Tegtmeier carefully qualified his answer: "Yes (as long as he has to stand …If can sit with leg propped up, then could work."  (Tr. 296, emphasis original). In September 2010, Dr. Tegtmeier did not specify any height at which Plaintiff would require his leg to be "propped up."

Notwithstanding his earlier opinions that clearly were consistent with sedentary work, on November 28, 2011, Dr. Tegtmeier completed a Physical Capacities Evaluation form in which he opined for the first time that Plaintiff was no longer capable of any full-time work.  (Tr. 855-859).  In that form, he opined that Plaintiff could sit only for 3 to 4 hours, and stand/walk for no more than 2 hours in an 8 hour day.  He stated that pain from Plaintiff's chronic back condition and recurrent left leg cellulitis, along with his obesity, caused Plaintiff to be disabled from even sedentary work.  (Tr. 857).  He rated Plaintiff's pain level as "moderate," defined as constituting a "significant handicap with sustained attention and concentration" that would "eliminate skilled work tasks," (Tr. 858), including Plaintiff's prior managerial work.  He opined that Plaintiff would need to elevate his legs for approximately four hours in an 8-hour day, again without stating any specific elevation height.  (Tr. 859).  Notably, Dr. Tegtmeier did not describe Plaintiff's pain as "severe," which was defined as precluding "the attention and concentration required for even simple, unskilled work tasks."  (Tr. 858).

---

[2]Cellulitis is a common, acute bacterial skin infection.  "Most patients can be treated as an outpatient with oral antibiotics."  http://www.ncbi.nlm.nih.gov/pubmed/21410612 (accessed on December 4, 2014).

The ALJ determined that Plaintiff remained capable of sedentary unskilled work. She explained that she was rejecting Dr. Tegtmeier's November 2011 opinions as "inconsistent" with the record as a whole, for the following reasons:

> Dr. Tegtmeier, a primary physician, opined in November 2011 that the claimant was not able to work, and he specifically alluded to the claimant's inability to stand for prolonged or frequent periods. While the objective medical evidence provided by Dr. Tegtmeier and other treating physicians supports a finding that the claimant is limited to sedentary activities, it does not establish that the claimant is disabled from all work activity. Furthermore, the issue of whether an individual is "disabled" …is reserved for the Commissioner….

(Tr. 76). Some of the records that the ALJ believed were inconsistent with Dr. Tegtmeier's opinions were a bone scan and Doppler studies in 2010 showing no osteomyelitis or deep venous thrombosis, an April 2011 MRI showing relatively minor back abnormalities with only minimal nerve or spinal cord encroachment, reports by Plaintiff that his pain medications were helpful in controlling his pain and without side effects, examinations showing full muscle strength with intact sensation and neurovascular status, only mild edema in his lower legs, and no leg pain with straight leg raise testing, despite somewhat decreased range of motion in his spine and some back pain. (Tr. 75). In addition, the ALJ noted that Plaintiff had experienced the exact same impairments and conditions (obesity, diabetes, chronic pain, swelling in his lower left leg) for several years prior to his DIB application, but nevertheless was able to continue full-time work.

The ALJ focused on Plaintiff's ability to continue his managerial position for 8 months after his back injury "by using a footstool to elevate his legs," even though he was unable to perform the frequent standing and walking required. (Tr. 75). The latter statement reflects a factual error, to the extent that Plaintiff testified that he used the

stool to sit when he could, and to apply heat to his leg while sitting, rather than to elevate his legs. Defendant concedes as much by stating that "ALJ King may have confused the fact that Mr. Ritchie used the stool merely to sit, and not to elevate his feet," but argues that the ALJ's broader finding – that sitting for most of the day would minimize his symptoms – is supported by Plaintiff's own testimony and the record as a whole.

Sedentary work generally involves periods of standing or walking that total no more than about 2 hours of an 8-hour workday, and sitting approximately 6 hours of the 8-hour workday. *See* 20 C.F.R. 404.1567(b); SSR 83-10. I agree with the ALJ's analysis that Dr. Tegtmeier's opinions appear to be somewhat inconsistent with the record as a whole. It is clear that Dr. Tegtmeier initially believed Plaintiff capable of sedentary work, and only later changed his opinion. But many of Plaintiff's reported daily activities seem at odds with his conclusion that Plaintiff is disabled even from unskilled sedentary work. For example, Plaintiff reported in his disability application that he mows the grass using a riding mower, does "minor house repairs,"[3] light dusting, goes outside daily, drives, can go out alone, shops in stores for groceries and clothes, works on the computer and watches TV. (Tr. 270). Plaintiff also stated that he enjoys playing cards and playing video games. (Tr. 271).

What gives the undersigned pause, however, is the fact that, despite rejecting the functional capacity opinions of two treating physicians, the ALJ did not rely on the opinions of <u>any</u> other medical sources to determine that Plaintiff could continue to

---

[3]One of Dr. Tegtmeier's notes reflects Plaintiff's report on September 2, 2011 that he was experiencing occasional pain in his right index finger after using a hand sander on doors for the past two weeks.

perform sedentary work without elevating his legs.  In other words, this is not a case in which the ALJ relied upon an examining consultant or a medical expert.  As stated, the ALJ essentially rejected the medical opinions of the only other medical sources in the record – the non-examining agency consultants.  It is true that the formulation of a plaintiff's RFC lies within the province of the Commissioner, but that formulation must be based upon substantial evidence in the record as a whole.  Usually, the evidence includes at least one medical opinion to support the RFC determined by the ALJ. Cases in which an ALJ has independently determined an RFC, while rejecting or giving "little weight" to virtually <u>all</u> of the medical opinion evidence, may not always reflect error, but naturally invite closer scrutiny.

On the one hand, there is some evidence to support the rejection of Dr. Tegtmeier's opinions in the assessment of Plaintiff's RFC. On the other hand, the ALJ clearly was mistaken in her understanding of the conditions under which Plaintiff continued to perform his managerial duties between December 2009 and August 2010. It appears likely that the ALJ based her RFC determination and hypothetical to the VE in part on that mistaken understanding.[4] And there is no question that Plaintiff's treating physicians believed that he needed to frequently elevate his legs to prevent recurring cellulitis, and was disabled in part due to his pain level.  The ALJ implicitly acknowledged a decline in Plaintiff's condition in August 2010, by virtue of her determination that he could no longer perform his past managerial work, but rather,

---

[4]The ALJ asked the VE specifically whether the job base would be eroded by a need to elevate his leg "under his work desk" by "up to 12 inches."  There is no evidence to support a 12 inch elevation (other than the ALJ's mistaken perception that Plaintiff used a stepstool for 8 months).  In any event, the VE responded that such a small elevation would not erode the job base at all. (Tr. 108).

could perform only unskilled sedentary work.  Yet, the ALJ chose not to include any limitation requiring Plaintiff to elevate his legs.

Defendant correctly points out that an ALJ is required to incorporate into a hypothetical posed to a vocational expert only those functional limitations that are supported by the record and accepted as credible.  Here, however, the ALJ's mistaken assumption that Plaintiff had previously worked using a footstool "to elevate his legs," the inconclusive articulation of evidence to support her RFC determination that Plaintiff could still perform sedentary work without elevating his legs, the lack of any supporting medical opinion, and her failure to adequately assess Plaintiff's obesity (discussed below), all contribute to a need for remand.

### b.  Dr. Bruce Siegel

Despite concluding that remand is required based upon the referenced constellation of errors, the undersigned is not as concerned with the ALJ's rejection of the opinions of Bruce F. Siegel, D.O., a physical medicine specialist who treated Plaintiff's pain for approximately 18 months.  Dr. Siegel opined in questionnaires completed in June and September 2011, and again in February 2012, that Plaintiff was unable to ambulate and that his pain level would preclude all work, including sedentary work. (Tr. 600, 603). Dr. Siegel opined that Plaintiff would need to elevate both legs to waist level while sitting, that he could lift no more than five pounds occasionally, and that Plaintiff would be absent from work more than three days per month.  (Tr. 600, 601-602).  The ALJ rejected all of his opinions as "inconsistent" with the record as a whole, as well as with Dr. Siegel's own records.  (Tr. 76).  The ALJ explained:

> Dr. Siegel's own progress reports do not support these extreme limitations.  On June 6, 2011, the claimant told Dr. Siegel that his pain

12

increased with prolonged sitting and standing and that he needed frequent changes in position.   An examination demonstrated a stiff, but non-antalgic gait, some difficulty arising from a seated position, hypertonicity, mild tenderness of the interspinous spaces, absent reflexes in the lower extremity, and mild dysesthesias over the bilateral great toes.  During a visit on September 19, 2011, the claimant reported that he shifted his position frequently, avoided lifting heavier items, and paced himself when outdoors and when performing yard work.  On October 17, 2011, the claimant reported exercising regularly at the YMCA and performing some household chores.  Subsequent progress notes indicated that the claimant reported increased pain when he sat a long time in the car and when he did a lot of walking or strenuous outside activity.  On most of these visits, the claimant reported a pain level of 4 to 5 when taking his medications, on a scale of 1 to 10.

(Tr. 76).  The ALJ's analysis is supported by the substantial evidence that is referenced.

As the ALJ points out, Dr. Siegel's October 17, 2011 note is remarkably at odds with his

disability opinions.  (Tr. 605-606).  He offers no support whatsoever for many of his

opinions, such as stating that Plaintiff can lift no more than five pounds occasionally.  In

addition, the primary basis for Dr. Siegel's February 2012 opinion that Plaintiff is

incapable of even sedentary work appears to be his assessment of Plaintiff's pain level.

(Tr. 603).  But Dr. Siegel (who was specifically treating Plaintiff's pain) assessed

Plaintiff's pain level as only "mild," defined as constituting "an irritation [that] would not

impede attention and concentration." (Tr. 604).  In selecting the lowest pain level listed,

Dr. Siegel passed over three more serious categories, including "severe," defined as

precluding "even simple unskilled work tasks."  (Tr. 604).

Although the opinions of a treating physician are ordinarily entitled to controlling

weight, the regulation requires such deference only for opinions that are "well-supported

by medically acceptable clinical and laboratory diagnostic techniques and … not

inconsistent with the other substantial evidence in your case record."  20 C.F.R.

§404.1527(c)(2).  *Accord Combs v. Com'r of Soc. Sec.*, 459 F.3d 640, 652 (6th Cir.

2006)(en banc)(holding that ALJ reasonably found that physician's records were inconsistent with his RFC assessment).  Here, the ALJ's rejection of the opinions of Dr. Siegel could be found to be reasonable on the record presented.  Nevertheless, to the extent that remand is required for other reasons, the ALJ should reconsider Dr. Siegel's opinion in the context of the record as a whole.

### 2.  Consideration of Plaintiff's Obesity

Plaintiff testified at the hearing that he is morbidly obese, at 5' 9" and weighing 455 pounds. (Tr. 91).  Social Security regulations do not permit a finding of disability based upon obesity, for obvious reasons.  According to the Centers for Disease Control and Prevention, more than one-third of all adults in the United States (34.9%) are obese, the vast majority of whom are not disabled. *See* http://www.cdc.gov/obesity/data/adult.html (accessed on December 1, 2014).  Plaintiff has been morbidly obese for years, but worked full-time prior to the alleged onset of disability.  As the ALJ noted, he weighed more than 400 pounds as of January 2010, while working for the same employer for whom he had worked for more than 11 years. (Tr. 72).  Nevertheless, "obesity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments." SSR 02-1p. Therefore, SSR 02-1p requires consideration of a claimant's obesity in the assessment of whether a claimant meets or equals any particular listing at Step 3, as well as in the assessment of an individual's residual functional capacity.

Importantly, Plaintiff does not claim that if obesity had been considered, he would have met or equaled any particular listing at Step 3. Historically the Sixth Circuit has

required only minimal articulation at Step 3 of the sequential analysis, *see Bledsoe v. Barnhart*, 165 Fed. Appx. 408, 412 (6th Cir. 2006)(stating that "[i]t is a mischaracterization to suggest that Social Security Ruling 02-01p offers any particular procedural mode of analysis for obese disability claimants."); *Contrast Diaz v. Com'r*, 577 F.3d 500 (3rd Cir. 2009)(remanding where the plaintiff claimed that she met or medically equaled a Listing based in part upon her morbid obesity).  Instead, Plaintiff argues only that the ALJ's failure to fully consider his obesity improperly impacted the ALJ's determination of his RFC at Steps 4 and 5 of the sequential analysis.  The Commissioner responds that the ALJ did adequately consider Plaintiff's obesity when she stated that "the objective criteria and symptom severity described in those [referenced] listings have not been met, even considering the additional and cumulative effects of obesity (Social Security Ruling 02-1p)."  (Tr. 73).  However, Plaintiff is correct that this sentence occurs in the ALJ's Step 3 analysis – the determination of whether Plaintiff met or equaled any Listing.  While the record is relatively close, the undersigned concludes that the ALJ's Step 4 and 5 analysis cannot be affirmed in this case, because Plaintiff's severe obesity appears to be integral to his claim.

When an ALJ's decision as a whole articulates the basis for his conclusion, the decision may be affirmed.  *See generally Hurst v. Sec'y of Health & Human Servs.*, 753 F.2d 517, 519 (6th Cir. 1985); *see also Moody v. Com'r of Soc. Sec.,* 2011 WL 3840217 at *9 (E.D. Mich. July 15, 2011)(affirming where medical evidence reflected obesity, and ALJ found that Plaintiff could not engage in *any* climbing, crawling, bending, kneeling, stooping or crouching, could stand for no more than 10 minutes at a time, and required a sit/stand option, all of which addressed mobility problems associated with obesity).

*Price v. Heckler*, 767 F.2d 281, 284 (6th Cir. 1985).  Here, however, to affirm on the basis of so little analysis would require this Court to take on a "fill in the blank" role that is contrary to established Sixth Circuit precedent. *See Norman v. Astrue,* 694 F. Supp.2d 738, 741 (N.D. Ohio 2010)(where obesity is severe impairment, ALJ must do more than "mention the fact in passing."); *Motley v. Com'r of Soc. Sec.*, Case No. 1:08-cv-418-SAS, 2009 WL 959876 (S.D. Ohio April 8, 2009)(remanding based upon failure to discuss evidence in light of analytical framework of Listing, including effect of obesity); *but contrast, Cranfield v. Com'r of Soc. Sec.*, 79 Fed. Appx. 852, 857 (6th Cir. 2003)(affirming in case where the claimant failed to present evidence of any specific obesity-related limitations, such that "the ALJ was not required to give the issue any more attention than he did.").

It is true that the ALJ briefly mentioned that Plaintiff's morbid obesity significantly predated his disability onset date.  But, like the undersigned's concern with the lack of sufficient explanation for the RFC determination (in light of the ALJ's rejection of all medical source opinions), the undersigned finds the discussion of Plaintiff's obesity to be inadequate on the record presented.

Morbid obesity is generally defined as having a BMI of 40 or greater by the Social Security Administration. At 5' 9" and weighing 455 pounds, the undersigned takes judicial notice of the fact that Plaintiff's BMI is 67.2,[5] significantly higher than that threshold.  Surgery and other treatment options have been limited and/or precluded due to Plaintiff's weight, and the medical evidence suggests that his pain and

---

[5]Body Mass Index ("BMI") is a measure of body fat based on height and weight, used to define obesity.  A BMI calculator is available on the NIH website.
http://www.nhlbi.nih.gov/health/educational/lose_wt/BMI/bmicalc.htm

musculoskeletal conditions have been significantly affected by his morbid obesity.  Yet, the ALJ heavily discounted Plaintiff's subjective complaints based in part on her review of the objective evidence, which showed only "relatively minor abnormalities" in Plaintiff's spine.  (Tr. 75).   In light of the extent to which treating medical sources believed that Plaintiff's morbid obesity significantly limited his functional abilities and exacerbated his multiple medical conditions (including pain) after August 2010, and the degree of Plaintiff's extreme obesity, remand for further analysis of obesity at Steps 4 and 5 of the sequential analysis is recommended.

### 3.  New and Material Evidence

Much of Plaintiff's Statement of Errors conflates the evidence presented before the ALJ with post-hearing evidence filed before the Appeals Council.  For example, Plaintiff argues vigorously that reversal is required because the Commissioner failed to consider opinions offered by treating physicians Drs. Siegel and Tegtmeier on assessment forms that are dated March and April, 2013, respectively.   The referenced assessments contain the most extreme limitations, and to that extent provide the strongest evidence of disability.  However, those assessments were not before the ALJ, and were determined not to be sufficiently "new and material" under social security regulations to warrant reconsideration of the ALJ's decision by the Appeals Council.  For that reason, this Court may not consider such evidence for purposes of determining whether substantial evidence supports the ALJ's decision.  *See Cotton v. Sullivan*, 2 F.3d at 696.  Instead, the undersigned may consider the newly presented evidence only insofar as Plaintiff seeks a "sentence six" remand to consider the new evidence.  However, a sentence six remand is available only if the Plaintiff proves that the

evidence is both new and material, and if he can demonstrate good cause for his failure to earlier present the evidence to the ALJ.

Plaintiff fails to make either showing. Defendant argues that, despite containing more detailed limitations, Drs. Tegtmeier's and Siegel's March and April 2013 assessments are cumulative of their prior RFC opinions, which were presented to the ALJ. In addition, Plaintiff does not dispute the Appeals Council's determination that Dr. Siegel's March 5, 2013 Statement concerned "a later time" than the time period under consideration by the ALJ, (Tr. 2), and to that extent is immaterial. Plaintiff argues that Dr. Tegtmeier's April 2013 assessment was more pertinent to the time period under consideration, but he still fails to show good cause for his failure to timely present that evidence to the ALJ.

Dr. Tegtmeier's April 2013 opinions are more detailed than his November 2011 opinions, but the undersigned agrees that they are largely cumulative. In April 2013, Dr. Tegtmeier opines that Plaintiff's pain increases with walking/standing, or "prolonged" sitting or lying down, and reiterates as he did in November 2011 that Plaintiff's pain level precludes all work. He states that it is medically necessary for Plaintiff to elevate his left leg to chest level or higher while sitting, and limits Plaintiff to sitting or standing continuously for only 15 minutes at a time, with no more than 3-4 hours of sitting or standing/walking during an 8-hour workday. Dr. Tegtmeier also has checked a box indicating that Plaintiff would require a morning break, lunch period, and afternoon break, as well as additional rest during an 8 hour day, and that Plaintiff would be absent from work more than three days per month.

Plaintiff not only fails to explain his failure to present this evidence prior to the evidentiary hearing, but he fails to demonstrate a "reasonable probability" that the ALJ would have come to a different decision if presented with the new opinions.  In the latter regard, it is worth pointing out that Dr. Tegtmeier's April 2013 Statement contains inconsistencies.  For example, he answers "yes" to indicate that "a hand held assistive device" is "[currently] medically required to aid the patient….in BOTH walking and standing." (Tr. 34).  However, in response to the next question concerning the type of device needed, he indicates that Plaintiff requires a cane, but then inconsistently writes: "N/A @ present." (*Id.*). He then opines that Plaintiff has been completely disabled from all work since October 22, 2009 (the date of Plaintiff's original back injury), even though there is no dispute that Plaintiff was able to work full-time at the light exertional level through August 2010.  (Tr. 35).

In addition to the new physical assessments completed by his treating physicians, Plaintiff tendered to the Appeals Council new evidence of a mental health impairment.  As with the more recent opinions of his treating physicians, Plaintiff fails to demonstrate "good cause" for his failure to present the mental health evidence to the ALJ, and further fails to show that the evidence was material.  Plaintiff made no claim of functional limitations related to depression before the ALJ, (Tr. 76), and has no history of mental health treatment.  (Tr. 73).  Nevertheless, the social security agency referred Plaintiff to Christopher Ward, Ph.D., for a consultative psychological exam in March 2011.  Dr. Ward diagnosed Plaintiff with depression, with a Global Assessment of Functioning (GAF) score of 65, indicating only mild functional limitations.  Non-examining reviewing consultants agreed that Plaintiff had no more than mild limitations,

and the ALJ therefore concluded that Plaintiff's depression was not a "severe" impairment.  (Tr. 73).  Despite the lack of any significant claim concerning depression, the ALJ restricted Plaintiff to performing "only simple, routine, and repetitive tasks" based upon some evidence that Plaintiff's "attention, concentration, and memory might be mildly limited as the result of chronic pain."  (Tr. 76).  Plaintiff fails to show that there is any reasonable probability that the ALJ would have determined any greater impairment based upon the more recent psychological evidence.  Therefore, a sentence six remand is not recommended.

### III.  Conclusion and Recommendation

For the reasons discussed above, the undersigned recommends remand only under sentence four. A sentence four remand under 42 U.S.C. §405(g) provides the required relief in cases where there is insufficient evidence in the record to support the Commissioner's conclusions and further fact-finding is necessary.  *See Faucher v. Secretary of Health and Human Servs.,* 17 F.3d 171, 174 (6th Cir. 1994) (citations omitted).

Accordingly, **IT IS RECOMMENDED THAT**:

1. The decision of the Commissioner to deny Plaintiff DIB benefits should be **REVERSED** and this matter should be **REMANDED** under sentence four of 42 U.S.C. §405(g);

2.  As no further matters remain pending, this case should be **CLOSED.**


       *s/ Stephanie K. Bowman*
      Stephanie K. Bowman
      United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

ANTHONY W. RITCHIE,                                    Case No. 1:14-cv-286

                    Plaintiff,                          Beckwith, J.
          v.                                            Bowman, M.J.


COMMISSIONER OF SOCIAL SECURITY,

                    Defendant.


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).